**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yulia Ruditser, | No. CV-22-02142-PHX-DLR |
| Plaintiff, | **AMENDED ORDER**[1] |
| v. | |
| Marianna Dukina, | |
| Defendant. | |

Pending before the Court is Plaintiff Yulia Ruditser's *ex parte* motion for a temporary restraining order ("TRO") and motion for alternative service. (Docs. 8, 9.) The motion for TRO is granted and the motion for alternative service is granted.

**I. Background**

Ruditser is the sister of Ivan Golovisitkov ("Deceased"). (Doc. 8-1 at 5.) Defendant Marianna Dukina was married to Deceased at one point. Ruditser believed the marriage to be a sham, entered into for citizenship purposes only, and Dukina had filed for divorce in 2021. (*Id.* at 5-6.) Ruditser and Dukina thereafter entered into a settlement agreement ("Agreement"), whereby Ruditser agreed to amend Deceased's death certificate to show that he and Dukina were married. (Doc. 8-3 at 15-19.) In return, Dukina agreed that she and Ruditser would choose twelve wines from Deceased's $180,000 wine collection, sell the rest and divide the proceeds evenly (the "wine provision") and (2) divide the balance

---

[1] This order amends and supersedes the previous version at Docket #11, correcting some errors found after the fact.

of Deceased's bank account evenly (the "bank provision"). (*Id.*)

But once Ruditser amended the death certificate and sent a copy to Dukina, things became less agreeable. Dukina did not show up at a hearing—despite the parties scheduling it around her availability—to appoint an executor for the estate. (Doc. 8-2 at 7.) At that hearing, Ruditser learned that Dukina had opened probate on Deceased estate as sole heir. (*Id.*) Ruditser thereafter filed a complaint with this Court in December 2022.

Not long after, Ruditser also learned that Dukina had emptied one of Deceased's bank accounts and contacted the wine storage company holding Deceased's wine in an attempt to gain access to the wines. (*Id.* at 8.) All the while, Ruditser attempted to serve Dukina at her last-known address but failed to do so. (*Id.*) And Dukina would not respond to emails. (Doc. 8-1 at 2.) Ruditser thus filed this *ex parte* motion for temporary restraining order, seeking to enjoin Dukina from selling Deceased's wine and directing Dukina not to further access any of Deceased's bank accounts. (Doc. 8-1 at 2-3.)

**II. The Temporary Restraining Order**

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in her favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another, although all elements still must be met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal.

2000).

First, success on the merits. "Under Pennsylvania law, a plaintiff who alleges breach of contract must demonstrate (i) the existence of a contract, including its essential terms, (ii) a breach of a duty imposed by the contract, and (iii) resultant damages."[2] *Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 513 F.Supp.2d 304, 314 (D. E.D. Penn. 2007). Ruditser has provided the Agreement, signed by herself and Dukina, provided evidence that Dukina has taken steps to breach and intends to breach two provisions of the Agreement, and has identified the financial harm that would result from the breach. Ruditser is likely to succeed on the merits.

Second, irreparable harm. The Ninth Circuit requires an evidentiary showing "sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). Here, if the wines are sold, Ruditser can never recover the wines to which she is entitled—specific wines are not fungible. Ruditser has provided evidence that Dukina has taken steps to sell the wines subject to the Agreement. (Doc. 8-3 at 51-52.) As for the funds in Deceased's bank account, Ruditer has provided evidence that Dukina has drained the account and then stopped responding to communications. This is evidence, albeit weak, that Dukina intends to dissipate the funds and may attempt to do the same to Deceased's other accounts. The Court notes that Ruditser does not provide direct evidence that Dukina has dissipated the funds or that Ruditser lacks sufficient assets to which a judgment could attach. But for present purposes, the Court finds that Ruditser has carried her burden to show a serious question as to irreparable harm.

Third, the balance of equities. Entering a TRO would protect Ruditser's contractual rights and the only harm to Dukina is that she would not be able to realize her rights under the Agreement so long as she impairs Ruditser's rights. The balance is in Ruditser's favor.

Lastly, the public interest. The public interest will be served by granting this injunction because the public policy of Pennsylvania is that it is favored to settle legal

---

[2] The parties agreed that the Agreement was to be governed by Pennsylvania law. (Doc. 8-3 at 17.)

disputes between parties. *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa. Super. 2009).

On balance, the elements favor entering a TRO.

### III. Issuing a TRO *Ex Parte*

A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating her allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required.  Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

Ruditser substantiated her allegations of irreparable harm with respect to the wine provision. She provided evidence that Dukina is seeking to sell the wines subject to the Agreement, and that after those wines are sold, Ruditser will not be able to choose twelve wines from the Deceased's collection, as provided by the Agreement.  (Doc. 8-1 at 4-5.) Ruditser has also substantiated her allegations of irreparable harm with respect to the bank account provision. She provided evidence that Dukina has breached this provision and will potentially hide or spend the monies.

Ruditser has also shown that she has made repeated, reasonable efforts to contact Dukina to no avail.  Indeed, Dukina has been nonresponsive and unreachable, despite Ruditser's attempt to serve her four times at her last-known address and contact her via email. (Docs. 8-1 at 4; 9 at 6.)

As for the bond, Ruditser has not suggested a bond amount.  Nevertheless, the Court finds that there is little realistic likelihood of harm to Dukina from enjoining her conduct. Thus, the Court finds no bond is necessary.

**IV. Motion for Alternative Service**

Because this lawsuit was filed in the District of Arizona, the Court applies Arizona law governing service of process. Fed. R. Civ. P. 4(e)(1). Under Arizona law, an individual may be served by

> (1) delivering a copy of the summons and the pleading being served to that individual personally;
>
> (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Ariz. R. Civ. P. 4.1. If personal service becomes impracticable, the Court may, on motion, authorize the person to be served in another manner. *Id.* "Impracticable does not mean impossible, but rather that service would be 'extremely difficult or inconvenient.'" *Bank of New York Mellon v. Dodev*, 433 P.3d 549, 558 (Ariz. Ct. App. 2018) (citing *Blair v. Burgener*, 245 P. 3d at 898, 903 (Ariz. Ct. App. 2010)).

> If the court allows an alternative means of service, the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement. In any event, the serving party must mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served.

*Id.*

Ruditser has attempted to serve Dukina personally at her last-known address, and the person who answered the door said that Dukina no longer lived there (meaning that Ruditser could not leave a copy of that summons and pleading with that individual). (Doc. 9 at 6.) Ruditser has also contacted Dukina's former counsel, who said he is not authorized to accept service on her behalf. (*Id.* at 9.) Rudister has also emailed Dukina several times at an email address Dukina has used in prior communications, seeking a waiver of service but to no avail. (*Id.* at 16.) Given the number of attempts at service and Dukina's nonresponsiveness The Court therefore finds that personal service is impracticable.

Ruditser asks the Court to

> order alternative or substitute service on Defendant, by leaving a copy of the summons and complaint at her last known residential address at 99-52 66th Road, Apt. 1-X, Rego Park, New York 11374, and by emailing a copy of the summons and complaint together with an order for alternative service to Defendant as her known email address mariannadmitrieva66@gmail.com, and a copy to her two known attorneys in another matter, Henry Jefferson at hjefferson@hjeffersonlawfirm.com and Billy Pachilakis at billy@nathanpinkhasov.com.

(*Id.* at 3.) The Court finds that these methods are reasonably calculated to give Dukina actual notice of this action against her. The Court will grant Ruditser's motion for alternative service.

**V. Conclusion**

Ruditser has carried her burden to show she is entitled to an *ex parte* TRO. Further, because personal service is impracticable, the Court permits alternative service as set out above. Finally, the Court will convert Plaintiffs' TRO motion into a motion for a preliminary injunction and set a briefing and hearing schedule.

**IT IS ORDERED** that Ruditser's *ex parte* motion for temporary restraining order (Doc. 8) is **GRANTED** as follows.

1. Dukina shall be enjoined from disposing of or receiving the wines at the New York Wine Warehouse under Ivan Golovistikov's account while this order is in effect.
2. Dukina shall be enjoined from accessing Deceased's bank accounts while this order is in effect.
3. Temporary restraining orders ordinarily expire in 14 days, though the Court may for good cause extend it. The Court finds good cause to extend the duration of this order both because of pre-existing demands on the Court's calendar, and because Ruditser will need time to effectuate service of process and Dukina will need time to meaningfully respond. This order will remain in effect for **31 days (through the date of the preliminary injunction hearing)**, unless the parties stipulate to an extension or Ruditser shows good cause for a further extension.

1    **IT IS FURTHER ORDERED** that Ruditser's motion for alternative service (Doc.
2 9) is **GRANTED**.  Ruditser shall effect alternative service by:

3    1. leaving a copy of the summons, complaint, and order authorizing alternative service
4       at Dukina's last known residential address at 99-52 66th Road, Apt. 1-X, Rego Park,
5       New York 11374, and

6    2. emailing a copy of the summons, complaint, and order authorizing alternative
7       service to Dukina at her known email address mariannadmitrieva66@gmail.com,
8       and a copy to her two known attorneys in another matter, Henry Jefferson at
9       hjefferson@hjeffersonlawfirm.com and Billy Pachilakis at
10      billy@nathanpinkhasov.com.

11   **IT IS FURTHER ORDERED** converting the motion for temporary restraining
12 order in a motion for preliminary injunction.  Dukina shall file a response by **March 7,**
13 **2023**, and Ruditser may file a reply by **March 17, 2023**.  The Court will set a preliminary
14 injunction hearing for **March 24, 2023 at 9:00 a.m**. The parties shall notify the Court by
15 **March 17, 2023** whether the hearing will be oral argument or an evidentiary hearing.
16   Dated this 21st day of February, 2023.

Douglas L. Rayes
United States District Judge